**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RONNIE D. STILWELL; COURTNEY STILWELL, husband and wife, *Plaintiffs-Appellants*, <br><br> v. <br><br> CITY OF WILLIAMS, an Arizona Municipal Corporation; JOSEPH DUFFY, Interim City Manager of the City of Williams; LYDA DUFFY, husband and wife; RAYMOND GLENN CORNWELL, former Public Works Director of the City of Williams; ELSIE CORNWELL, husband and wife; BILLY PRUITT; BESSIE PRUITT, husband and wife; TRACY FULLER; KATHY FULLER, husband and wife, *Defendants-Appellees.* | No. 14-15540 <br><br> D.C. No. 3:12-cv-08053-HRH <br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
H. Russel Holland, District Judge, Presiding

Argued and Submitted March 14, 2016
San Francisco, California

Filed August 5, 2016

Before: Ferdinand F. Fernandez, Ronald M. Gould, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Friedland;
Dissent by Judge Fernandez

## SUMMARY[*]

**Civil Rights/Age Discrimination in Employment Act**

The panel reversed the district court's summary judgment and remanded in an action brought by a City of Williams employee who alleged that he was fired for planning to testify against the City in a lawsuit relating to age discrimination.

The panel first held that plaintiff was engaged in speech as a citizen for First Amendment purposes because his sworn statements and imminent testimony about the City's retaliatory conduct were outside the scope of his ordinary job duties and were on a matter of public concern.

The panel held that the retaliation provision of the Age Discrimination in Employment Act (ADEA), did not

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

preclude plaintiff's 42 U.S.C. § 1983 First Amendment retaliation claim. The panel held that the disparities between the rights and protections of the ADEA's retaliation provision and the First Amendment as enforced through § 1983 — including differences in who may sue and be sued, the standards for liability, and the damages available — which made the ADEA's protections narrower than the First Amendment's in some respects, led the panel to conclude that Congress did not intend to preclude § 1983 First Amendment retaliation suits when it enacted the ADEA.

Dissenting, Judge Fernandez stated that this court was bound by *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009), which held that "the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983."

## COUNSEL

Charles Anthony Shaw (argued), Law Offices of Charles Anthony Shaw, PLLC, Prescott, Arizona, for Plaintiffs-Appellants.

Kenneth H. Brendel (argued), Mangum, Wall, Stoops & Warden, PLLC, Flagstaff, Arizona, for Defendants-Appellees.

**OPINION**

FRIEDLAND, Circuit Judge:

Plaintiff-Appellant Ronnie Stilwell sued his city employer for retaliation, alleging that he was fired for planning to testify against the City in a lawsuit relating to age discrimination. Stilwell asserted that his termination violated both the First Amendment and the retaliation provision of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d). The question we must answer is whether the retaliation provision of the ADEA precludes a plaintiff such as Stilwell from bringing a First Amendment retaliation claim under 42 U.S.C. § 1983. We hold that it does not.

I.

Stilwell became Superintendent of the Water Department of the City of Williams, Arizona (the "City"), in 1991, and he served in that position until his termination in January 2011. It is the events surrounding his termination that gave rise to the instant lawsuit.[1] Those events began when Stilwell became aware of a lawsuit against the City filed by Carolyn Smith, the City's former Human Resources Director (the "*Smith* suit"). Smith alleged that the City retaliated against her in violation of the retaliation provision of the ADEA, after she complained about age discrimination against a different city employee, Glen Cornwell. In August

---

[1] Because this case comes to us on appeal from a grant of summary judgment to Defendants, "[w]e view the facts in the light most favorable to Stilwell, the non-moving party." *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1193 (9th Cir. 2007).

2009, Stilwell signed a sworn statement that supported Smith's ADEA retaliation claim, and agreed to testify in Smith's lawsuit. Later that month, a formal disclosure regarding Stilwell's involvement as a witness was served upon the City as well as on then-Assistant City Manager Joe Duffy.

Stilwell alleges that following this agreement to testify, Duffy took numerous negative actions towards him that constituted retaliation. Between August and December 2009, Duffy sent Stilwell emails with negative comments, including emails attacking his job performance. In December 2009, Duffy became Interim City Manager and met with Stilwell to discourage him from testifying in the *Smith* suit.

In June 2010, the judge in the *Smith* suit denied a motion from the City Attorney to prevent Stilwell's testimony. Duffy then had another meeting with Stilwell, in which Duffy stated that he wanted Stilwell to find a way out of testifying.

In September 2010, at a meeting with another city department head, the issue of Stilwell's anticipated testimony for the *Smith* suit arose again. Stilwell explained that he would tell the truth if he was called to the stand, including by describing how Duffy had retaliated against Smith. Duffy and Stilwell subsequently had another confrontation in which Duffy expressed displeasure about Stilwell's agreeing to testify. Following that confrontation, Duffy began to express additional concerns about Stilwell's job performance.

In October 2010, Duffy continued to find problems with Stilwell's job performance, including criticizing Stilwell's

handling of a situation in which the City's water turned brown.  Duffy also sent the City Council a memo accusing Stilwell of neglecting security concerns at the City's water plant.  Stilwell asserted that these issues were not his fault.

In December 2010, Stilwell was placed on paid administrative leave, pending an investigation into Duffy's allegations.  In January 2011, the City terminated Stilwell's employment based on the results of that investigation.

Stilwell sued the City and Duffy, among others, in the United States District Court for the District of Arizona.  The suit asserted sixteen claims, including retaliation in violation of the ADEA and the First Amendment.[2]  Stilwell moved for partial summary judgment, and Defendants cross-moved for summary judgment as to all claims.  The district court granted Defendants' motion, and Stilwell appealed the rulings on eight claims.[3]

## II.

The district court granted summary judgment in favor of Defendants on Stilwell's § 1983 First Amendment claim on the sole ground that the retaliation provision of the ADEA, 29 U.S.C. § 623(d), precluded a § 1983 First Amendment retaliation claim such as Stilwell's.  We review the district court's decision *de novo*.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Applying the framework

---

[2] Stilwell sued along with his wife.  Because the Complaint does not allege any claims individual to Stilwell's wife, we have referred to the claims as Stilwell's claims.

[3] Stilwell's appellate arguments relating to claims other than his § 1983 First Amendment retaliation claim are addressed in a concurrently-filed memorandum disposition.

set forth in *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), for determining the preclusive effect of a statute on § 1983 actions to remedy constitutional violations, we hold that Stilwell's § 1983 First Amendment lawsuit is not precluded.

### A.

As a threshold matter, before turning to the preclusion question, we reject the City's argument that Stilwell's speech was not "speech as a citizen on a matter of public concern" and so fell outside the First Amendment's protections. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014). Stilwell's sworn statement and imminent testimony were "outside the scope of his ordinary job duties," which means that he was engaged in "speech as a citizen for First Amendment purposes." *Id.* (explaining that an employee's testimony in response to a subpoena about his employer's practices was "outside the scope of his ordinary job duties" and thus "speech as a citizen"). And Stilwell's sworn statement and planned testimony about the City's retaliatory conduct were on a matter of public concern. *See Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004) ("[W]e hold that a public employee's testimony addresses a matter of public concern if it contributes in some way to the resolution of a judicial or administrative proceeding in which discrimination or other significant government misconduct is at issue.").

Moreover, contrary to the City's argument, the fact that Stilwell had submitted only an affidavit and did not ultimately testify in court does not foreclose First Amendment protection. In *Alpha Energy Savers*, we held that although the plaintiff, a city contractor, never actually testified in a former associate's federal discrimination

lawsuit because the suit settled, the conduct that occurred prior to the settlement was protected under the First Amendment. 381 F.3d at 922, 923–24. That conduct included "not only the affidavit that [the contractor] filed on [the associate's] behalf and his testimony at [the associate's] grievance hearing but also [the contractor's] agreement to be listed as a witness in the judicial proceedings." *Id.* at 923–24. Similarly, Stilwell's sworn statement on a matter of public concern and his express plan to testify in court along the same lines, fall within the purview of the First Amendment. *Cf. Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1418 (2016) (holding that whether the protected speech was actually engaged in by the employee is not determinative because it is the perception of the employer as to whether that protected activity occurred that matters to a First Amendment retaliation claim).

## B.

Congress enacted the ADEA in order to "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Although nearly all of the ADEA focuses on direct age discrimination, it contains a retaliation provision as well:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for

> membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C.A. § 623(d).

Section 1983, in contrast, is not itself a source of substantive rights, but is a mechanism for vindicating federal statutory or constitutional rights. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Specifically, § 1983 provides that "[e]very person who, under color of [State law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Despite § 1983's broad wording, that section's availability as a remedy for violations of federal statutory or constitutional rights may be foreclosed in the event that Congress enacts a statutory scheme indicating an intent to preclude § 1983 suits. In a line of cases beginning with *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1 (1981), the Supreme Court has set forth principles for determining when a § 1983 cause of action is precluded. Because this line of cases, and particularly *Fitzgerald*, 555 U.S. 246, the most recent of them, provides the framework for our analysis here, we describe the cases in some detail.

In *Sea Clammers*, the Court addressed whether the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act precluded § 1983 suits to remedy violations of those Acts.  To divine Congress's intent, the Court examined "the remedial devices provided in [each] particular Act," to determine if they were "sufficiently comprehensive" to indicate a "congressional intent to preclude the remedy of suits under § 1983." *Sea Clammers*, 453 U.S. at 20.  The Court observed the "unusually elaborate enforcement provisions" in each Act—which provided for civil as well as criminal penalties that could be assessed by the Environmental Protection Agency, and included citizen suit provisions that required private plaintiffs to "comply with specified procedures" before filing in court. *Id.* at 13–14.  The Court held that these comprehensive remedial provisions demonstrated that Congress intended to preclude § 1983 lawsuits to remedy a violation of the statutory rights created in those same Acts. Thus, the Court held that a plaintiff could not bring a § 1983 suit to remedy a violation of either the Federal Water Pollution Control Act or the Marine Protection, Research, and Sanctuaries Act.

In *Smith v. Robinson*, 468 U.S. 992, 1013 (1984), *superseded on other grounds by* Handicapped Children's Protection Act, Pub. L. No. 99-372, § 2, 100 Stat. 796 (1986) (codified at 20 U.S.C. § 1415(1)), the Supreme Court considered a related, but distinct question—whether a statute precluded a § 1983 suit to enforce a constitutional right.  In *Smith*, the Court examined whether the Education of the Handicapped Act (the "EHA") precluded § 1983 suits alleging Fourteenth Amendment equal protection violations based on disability discrimination in education.  468 U.S. at

1013.**[4]**  In holding that such suits were precluded, the Court first explained that constitutional equal protection rights and the rights protected by the EHA were essentially co-extensive.  *See id.* at 1009.  Such congruence was unsurprising given that the EHA was enacted as a response to a series of court cases that established the "right to an equal education opportunity for handicapped children," *id.* at 1010, and that "Congress perceived the EHA as the most effective vehicle for protecting the constitutional right of a handicapped child to a public education" recognized in those cases.  *Id.* at 1013.  Indeed, the Senate Report on the EHA described the statute as having "incorporated the major principles of th[ose] right to education cases." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 194 n.18 (1982).  After concluding that the statutory and constitutional claims were "virtually identical," *Smith*, 468 U.S. at 1009, the Supreme Court turned to the EHA's remedial scheme, explaining that "the Act establishes an elaborate procedural mechanism to protect the rights of handicapped children," that "begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." *Id.* at 1010–11. Ultimately, the Court held that "[a]llowing a plaintiff to circumvent the EHA administrative remedies" through a § 1983 action "would be inconsistent with Congress'

---

**[4]** In *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113 (2005), the Court appears to have mischaracterized *Smith* as involving the question of whether § 1983 suits could enforce statutory rights. *Compare Rancho Palos Verdes*, 544 U.S. at 121 ("We have found § 1983 unavailable to remedy violations of federal statutory rights in two cases: *Sea Clammers* and *Smith*."), *with Smith*, 468 U.S. at 1008–09 ("As petitioners emphasize, their § 1983 claims were not based on alleged violations of the EHA, but on independent claims of constitutional deprivations." (footnote omitted)).

carefully tailored scheme," *id.* at 1012, and that because Congress gave no indication in the EHA's legislative history that it intended to allow such § 1983 suits, the alternative § 1983 remedy was precluded.

The Supreme Court again confronted the question of preclusion of § 1983 actions in *City of Rancho Palos Verdes, California v. Abrams*, 544 U.S. 113, 127 (2005). The Court there asked whether the Telecommunications Act of 1996 precluded § 1983 suits alleging violations of that Act—a question of enforcement of a statutory right akin to that in *Sea Clammers*. To answer that question, the Court contrasted *Sea Clammers* and *Smith* with other cases that had held § 1983 actions to be available to enforce federal statutes that "*did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." 544 U.S. at 121 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 133–34 (1994) and *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108–09 (1989), among other cases).**[5]** Because the

---

**[5]** In *Gonzaga University v. Doe*, 536 U.S. 273, 281–83 (2002), the Supreme Court made it much more difficult to infer privately enforceable rights in federal statutes that lack private rights of action. This decision had the effect of cabining the line of cases that had held § 1983 actions to be available to enforce such statutes. Post-*Gonzaga*, "'[t]he question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative' where a 'statute by its terms grants no private rights to any identifiable class.'" *Id.* at 283–84 (alterations in original) (quoting *Touche Ross & Co. v. Redington,* 442 U.S. 560, 576 (1979)); *see Sanchez v. Johnson*, 416 F.3d 1051, 1057 (9th Cir. 2005) (explaining that *Gonzaga* clarified that it is only "Congress's use of explicit, individually focused, rights-creating language that reveals congressional intent to create an individually enforceable right in a spending statute"). And, where there was no private right to enforce, there could be no § 1983 action to enforce it. *See Sanchez*, 416 F.3d at 1062 ("After *Gonzaga*, . . . a plaintiff seeking

Telecommunications Act created a private right of action—and, particularly, a limited one with a 30-day statute of limitations and no provision for attorney fees or costs—the Court held that allowing § 1983 suits that would not have those limitations "would distort the scheme of expedited judicial review and limited remedies created by [the Act]." *Id.* at 127.  The Act thus "precluded resort to § 1983." *Id.*

Most recently, in *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), the Supreme Court considered again, as it had in *Smith*, whether a statute precluded use of § 1983 to remedy an alleged constitutional violation.  Specifically, the Court evaluated whether Title IX, which prohibits gender discrimination in educational programs receiving Federal financial assistance, 20 U.S.C. § 1681(a), was "meant to be an exclusive mechanism for addressing gender discrimination in schools," or whether plaintiffs alleging gender discrimination could also bring equal protection claims under § 1983.  555 U.S. at 258. Looking to *Sea Clammers*, *Smith*, and *Rancho Palos Verdes* as guiding precedent, the Court emphasized that those "cases establish that 'the crucial consideration is what Congress intended.'" *Fitzgerald*, 555 U.S. at 252 (alteration omitted) (quoting *Smith*, 468 U.S. at 1012).

The Court then summarized different approaches for determining Congress's intent with respect to preclusion of § 1983 suits, depending on whether the § 1983 suits would enforce statutory or constitutional rights.  "In those cases in which the § 1983 claim is based on a *statutory right*,

redress under § 1983 must assert the violation of an individually enforceable *right* conferred specifically upon him, not merely a violation of federal law or the denial of a *benefit* or *interest,* no matter how unambiguously conferred.").

'evidence of such congressional intent [to preclude the § 1983 remedy] may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Rancho Palos Verdes*, 544 U.S. at 120 (emphasis added)). With respect to constitutional claims, however, the Court explained:

> In cases in which the § 1983 claim alleges a *constitutional violation*, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional rights. Our conclusions regarding congressional intent can be confirmed by a statute's context.

*Id.* at 252–53 (emphasis added).

After setting forth these inquiries, the Court first observed that, in contrast to the statutes at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*, "Title IX has no administrative exhaustion requirement and no notice provisions." *Id.* at 255. Rather, Title IX's implied right of action allows plaintiffs to "file directly in court," and to "obtain the full range of remedies." *Id.* The Court stated that, "[a]s a result, parallel and concurrent § 1983 claims will neither circumvent required procedures, nor allow access to new remedies." *Id.* at 255–56.

The Court then compared the "substantive rights and protections" provided by Title IX to those afforded under § 1983 suits to remedy violations of the Equal Protection Clause. The Court examined the mismatch in which entities may be sued and which entities are exempted, *id.* at 256–57, the differences in what conduct is prohibited, *id.* at 257, and the disparate standards of liability and burdens of proof required to prevail under each provision, *id.* at 257–58. With respect to which entities may be sued under Title IX and § 1983 equal protection causes of action, respectively, the Court explained that "Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions," but does not "authoriz[e] suit against school officials, teachers, and other individuals." 555 U.S. at 257 (citations omitted). In contrast, "[t]he Equal Protection Clause reaches only state actors, [and] § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities." *Id.*

In its comparison of the "substantive rights and protections," the Court also underscored the differences between the types of conduct prohibited under each of the schemes. The Court explained that "Title IX exempts elementary and secondary schools from its prohibition against discrimination in admissions, § 1681(a)(1); it exempts military service schools and traditionally single-sex public colleges from all of its provisions, §§ 1681(a)(4)–(5)." *Fitzgerald*, 555 U.S. at 257. But, the Court noted, some of what is exempted under Title IX "may form the basis of equal protection claims" for gender discrimination under § 1983. *Id.*

Finally, the Court observed that "[e]ven where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for

establishing liability may not be wholly congruent." *Id.* at 257. It explained that "a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference," whereas "[a] plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Id.* at 257–58 (citing *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

The Court concluded that "[i]n light of the divergent coverage of Title IX and the Equal Protection Clause, as well as the absence of a comprehensive remedial scheme comparable to those at issue in *Sea Clammers, Smith,* and *Rancho Palos Verdes*, . . . Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools." *Fitzgerald*, 555 U.S. at 258. Because Title IX was not intended as a "substitute for § 1983 suits as a means of enforcing constitutional rights," the Court held "that § 1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools." *Id.*

The Supreme Court then reasoned that its "conclusion [was] consistent with Title IX's context and history." *Id.* The Court explained that "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964," and "[a]t the time of Title IX's enactment . . . Title VI was routinely interpreted to allow for parallel and concurrent § 1983 claims." *Id.* Given "the absence of any contrary evidence, it follows that Congress intended Title IX to be interpreted similarly to allow for parallel and concurrent § 1983 claims." *Id.* at 259. The Court noted that "the relevant question is not whether

Congress envisioned that the two types of claims would proceed together in addressing gender discrimination in schools; it is whether Congress affirmatively intended to preclude this result," *id.* at 259 n.2, and the Court found no such intent reflected in the legislative history, *id.* at 259.

The *Sea Clammers* line of cases teaches that when Congress creates a right by enacting a statute but at the same time limits enforcement of that right through a specific remedial scheme that is narrower than § 1983, a § 1983 remedy is precluded. This makes sense because the limits on enforcement of the right were part and parcel to its creation. When a right is created by the Constitution, however, and a statute merely recognizes it or adds enforcement options, the analysis differs. *Fitzgerald* teaches that, in that situation, if the statute's rights and protections diverge in "significant ways" from those provided by the Constitution, a § 1983 remedy is not precluded. 555 U.S. at 252–53.

## C.

Following *Fitzgerald*, to determine whether the ADEA's retaliation provision precludes § 1983 First Amendment retaliation suits, we must determine whether the "contours of such rights and protections" provided by the two "diverge in significant ways." *Fitzgerald*, 555 U.S. at 252–53. The ADEA provides an express private right of action, which weighs in favor of finding preclusion under *Sea Clammers* and its progeny. But the disparities between the rights and protections of the ADEA's retaliation provision and the First Amendment as enforced through § 1983—including differences in who may sue and be sued, the standards for liability, and the damages available—which make the ADEA's protections narrower than the First Amendment's

in some important respects, cause us to conclude that Congress did not intend to preclude § 1983 First Amendment retaliation suits.

1.

The ADEA provides both an express private right of action, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 67 (2000), and an administrative exhaustion requirement to file a complaint with the EEOC.  29 U.S.C. § 626(c)–(d).

If we were evaluating the preclusion of § 1983 suits as a mechanism to enforce a *statutory* right created by the ADEA, the detailed nature of its remedial scheme might be dispositive.  But, under *Fitzgerald*, it is not.  *Fitzgerald* instructed that, "[i]n cases in which the § 1983 claim alleges a constitutional violation," the presence of significant differences in the "rights and protections" offered by the Constitution and the statute in question make it unlikely "that Congress intended to displace § 1983 suits enforcing constitutional rights" by enacting the statute.  555 U.S. at 252–53.[6]  Accordingly, the Supreme Court in *Fitzgerald* looked not only to whether Title IX had an express cause of action; it also engaged in a detailed comparison of Title IX's implied right of action and § 1983 equal protection claims.  Following this guidance from *Fitzgerald*, we turn to comparing the substantive rights and protections afforded by the ADEA's retaliation provision and those provided under the First Amendment, as enforced through § 1983.

_____

[6] Of course, because *Fitzgerald* was discussing a statute that lacked an express private right of action, the Supreme Court was not confronted with the question of how important the comprehensiveness of the remedial scheme is vis-à-vis the significant divergence of "the contours of . . . rights and protections."  555 U.S. at 252–53.  Nor did it attempt to answer that question.

2.

a.

Like the disparities identified in *Fitzgerald*, our examination of the ADEA's retaliation provision and First Amendment retaliation claims brought under § 1983 reveals differences in who may sue and be sued. First, the ADEA does not allow for suit against individuals, whereas § 1983 does. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587–88 (9th Cir. 1993) (holding that individual defendants cannot be held liable for damages under the ADEA); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983."); *see also Levin v. Madigan*, 692 F.3d 607, 621 (7th Cir. 2012) ("In contrast [to an ADEA plaintiff], a § 1983 plaintiff may file suit against an individual, so long as that individual caused or participated in the alleged deprivation of the plaintiff's constitutional rights." (citation omitted)).

Second, state employees, in practice, cannot sue under the ADEA but can sue under § 1983. In *Kimel*, the Supreme Court held that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals," and thus, state employers could not be sued by state employees under the ADEA. 528 U.S. at 91. This holding, combined with the fact that the ADEA does not allow suits against individuals (and thus does not allow suits against state officials or supervisors), means that state employees may not bring claims under the ADEA. *See Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009) (explaining that "[i]f the ADEA is the exclusive remedy for age discrimination in the workplace, then plaintiffs are left without a federal forum for age discrimination claims against state actors."). Although

§ 1983 likewise did not abrogate States' Eleventh Amendment immunity and therefore does not allow suits against States themselves or individuals in their official capacities, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), § 1983 does provide a remedy to state employees by allowing suits against state officials in their individual capacities, *see Hafer*, 502 U.S. at 31.

Third, the ADEA is generally applicable to private and public (but not state) employers with twenty or more employees. 29 U.S.C. § 630(b) (defining "employer").[7] In contrast, § 1983 is generally inapplicable to private employers.[8]  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982))).

Finally, the Supreme Court has held that independent contractors may sue under § 1983 for First Amendment retaliation. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 686 (1996) ("[W]e recognize the right of independent government contractors not to be terminated for exercising their First Amendment rights."). In contrast, "[a] claimant under . . . the ADEA must establish himself as an 'employee,'" thus excluding independent

---

[7] The 1974 Amendments to the ADEA extended the protections of the ADEA to federal employees. *Bunch v. United States*, 548 F.2d 336, 338 (9th Cir. 1977); 29 U.S.C. § 633a (setting forth ADEA requirements for federal employers).

[8] In certain circumstances a private employer could be considered a state actor. In such circumstances, an employee plaintiff could sue such an employer under § 1983 as well as under the ADEA. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

contractors. *Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1312 (9th Cir. 1998).

b.

Also similar to the differences identified in *Fitzgerald*, there is a difference between ADEA retaliation suits and § 1983 First Amendment retaliation suits in how liability is established under each. *See Fitzgerald*, 555 U.S. at 257 (examining different standards of liability for Title IX and § 1983 claims).

First, an ADEA plaintiff bears a greater burden of proof as to causation than a plaintiff bringing a First Amendment retaliation claim. Once the plaintiff bringing a First Amendment retaliation claim via § 1983 has demonstrated that the protected conduct was a "motivating factor" in the retaliatory action, "the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J,* 467 F.3d 755, 770 (9th Cir.2006)); *see also Thomas v. County of Riverside*, 763 F.3d 1167, 1169 (9th Cir. 2014) (per curiam) (explaining that First Amendment retaliation cases are governed by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977), under which, once a plaintiff makes a showing that protected speech was a substantial or motivating factor in the employer's taking a non-trivial adverse employment action, a defendant can escape liability only by meeting the burden of proving by a preponderance of the evidence that it would have reached the same decision even absent the plaintiff's protected speech).

In contrast, in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court outlined a different framework in the context of Title VII retaliation claims—which is relevant to ADEA retaliation claims because we have long considered the ADEA retaliation provision to be the "equivalent of the anti-retaliation provision of Title VII," *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). In *Nassar*, the Court held that a plaintiff alleging retaliation under Title VII must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." 133 S. Ct. at 2533. The Court explained that this burden on the plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" is "more demanding than the motivating-factor standard." *Id.* at 2534.

Second, exactly as in *Fitzgerald*, 555 U.S. at 257, there is a difference in the requirements for establishing liability between the ADEA retaliation clause and § 1983 when the defendant is a municipality. Under § 1983, "municipalities [may not] be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). In contrast, no such requirement exists for ADEA claims brought against municipalities. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245, 247 (3d Cir. 2006) (explaining that "a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice" in § 1983 actions, but that "a plaintiff may bring an ADEA claim against a political subdivision of a state based on the actions of its employee(s)" (footnotes omitted)); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010)

(explaining in the context of an ADEA retaliation claim that "[a]n employer will be strictly liable for a supervisor's proven discrimination where such discrimination results in an adverse employment action").

c.

Finally, the remedies available to those individuals bringing suit under the ADEA's retaliation provision and § 1983 are different. For example, ADEA plaintiffs may recover lost wages and liquidated damages from employers but may not recover damages for emotional pain and suffering. *See C.I.R. v. Schleier*, 515 U.S. 323, 326 (1995) ("[T]he Courts of Appeals have unanimously held, and respondent does not contest, that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress."). In contrast, the Supreme Court has explained that "compensatory damages [in § 1983 suits] may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation . . . , personal humiliation, and mental anguish and suffering.'" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (second alteration in original) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974)).

3.

These distinctions demonstrate that the ADEA's retaliation protections diverge significantly from those available under § 1983 First Amendment lawsuits.[9] Most

---

[9] The list of differences between ADEA retaliation actions and § 1983 First Amendment retaliation actions discussed herein is not necessarily exhaustive.

significantly in our view, the ADEA's retaliation provision provides less protection to an alleged victim of retaliation than does the First Amendment in several important ways—the ADEA's protections exclude independent contractors and state employees, do not allow for suit against individuals, require plaintiffs to bear a heavier burden of proof as to causation, and exclude certain types of remedies like damages for mental suffering.  And although the ADEA affords greater protection to some individuals that would not normally be covered by § 1983 because it subjects private employers to suits and it does not require proof of a municipal policy for those suing municipalities, this does not negate the fact that the ADEA provides less protection in the important ways discussed above.

If we were evaluating a purely statutory right, as in *Sea Clammers* or *Rancho Palos Verdes*, the fact that some aspects of the ADEA's protections are narrower would suggest preclusion.  That is because, if a statute creating a right also creates a mechanism for enforcement that is more limited than § 1983, we assume Congress intended those limits to apply to that right.  *See Rancho Palos Verdes*, 544 U.S. at 121 ("[T]he existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not.").

When considering "substantial" constitutional rights, however, we are "[m]indful that we should 'not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy.'"  *Fitzgerald*, 555 U.S. at 256 (quoting *Smith,* 468 U.S. at 1012).  Thus, if there are differences in the protections offered by the statute as compared to those provided by the Constitution, particularly if the protections

granted by the statute are narrower, we will not hold § 1983 suits to be precluded unless Congress manifested an intent to preclude. *See id.* at 259 n.2 (explaining that the relevant inquiry is not whether "Congress envisioned that the two types of claims would proceed together," but whether "Congress *affirmatively intended* to preclude," § 1983 suits to vindicate constitutional rights) (emphasis added)).  Here, as in *Fitzgerald*, the disparities—in particular those that demonstrate the ADEA's protections are narrower than those guaranteed by the Constitution—are sufficient to cause us to conclude that, unless Congress manifested a clear intent to do so, § 1983 First Amendment retaliation suits are not precluded.  And there is no express statement of preclusion in the text of the ADEA that would cause us to conclude that Congress did in fact affirmatively intend to preclude § 1983 First Amendment retaliation suits relating to speech about age discrimination.

## D.

The Senate and House Reports on the ADEA also offer no reason to believe that Congress intended through the ADEA to preclude § 1983 First Amendment retaliation claims related to allegations of age discrimination.  "Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (quoting *Roth v. United States,* 354 U.S. 476, 484 (1957)).   Given the importance of speech in our democracy, it seems unlikely that Congress would narrow First Amendment protections without serious consideration.  At a minimum, we would expect to find some discussion of such a significant change in the official Reports on the ADEA.  Yet we find nothing in

those Reports suggesting that Congress even considered preclusion of First Amendment claims, let alone intended such a result.[10]

Unlike in *Smith* where the legislative history made clear that the EHA was specifically designed to "protect[] the constitutional right of a handicapped child to a public education," *Smith*, 468 U.S. at 1013, the Senate Committee Report accompanying the original ADEA legislation says nothing about the purpose of the retaliation provision, and it never mentions the First Amendment. With respect to the retaliation provision, the full statement in the "section by section" analysis portion of the Report provides:

> [This subsection] makes it unlawful for employers, employment agencies and labor unions to discriminate against a person because he has opposed a practice made unlawful by this act, or because he has made a charge, testified, or assisted or participated in any manner in an investigation, proceeding, or litigation under this act.

S. Rep. No. 90-723, at 8 (1967). This statement is essentially a recitation of the language of the retaliation provision and sheds no additional light on its purpose.

The House Report accompanying the original legislation is similarly devoid of any indication that Congress considered the preclusive effect of the retaliation provision

---

[10] We "rel[y] on official committee reports when considering legislative history." *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999). The parties have not pointed us to any other legislative history, beyond the Committee Reports, describing the purpose or intent of the retaliation provision of the ADEA.

of the ADEA on § 1983 First Amendment retaliation claims. *See* H.R. Rep. No. 90-805, at 9 (1967). The House Report offered essentially the same recitation of the statutory language as the Senate Report, with no additional analysis that would shed light upon Congress's intent. *Id.* ("[This subsection] makes it unlawful for employers, employment agencies and labor unions to discriminate against a person because he has opposed a practice made unlawful by this act, or because he has made a charge, testified, or assisted or participated in any manner in an investigation, proceeding, or litigation under this act.").[11]

### E.

The result that the retaliation provision of the ADEA does not preclude § 1983 First Amendment retaliation suits makes sense in light of the heightened level of protection that the Constitution affords First Amendment rights. Rights subject to heightened scrutiny are much more likely to be the basis of a successful constitutional claim than are those subject to rational basis review. *See, e.g.*, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000) (explaining the greater difficulty in prevailing on an equal protection claim subject

---

[11] This lack of comment on the retaliation provision's relationship to the First Amendment is unsurprising because as originally enacted, the ADEA did not apply to states or the federal government. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 68 (2000) ("In 1974, in a statute consisting primarily of amendments to the FLSA, Congress extended application of the ADEA's substantive requirements to the States."). The focus of the Reports accompanying those amendments was on the expansion of coverage, and there is no indication that Congress re-considered the retaliation provision in light of the expansion of coverage. *See* S. Rep. No. 93-690, at 55–56 (1974) (discussing the amendments to the definition of employer to expand coverage, but not mentioning the retaliation provision); H.R. Rep. No. 93-913, at 40–41 (1974) (same).

to rational basis review than on one subject to heightened scrutiny).

When a statute creates a cause of action to enforce a right that would only be subject to rational basis review under the Constitution, it is very unlikely as a practical matter that the statute will provide less protection than the Constitution. For example, as the Supreme Court explained in *Kimel*, "[t]he [ADEA], through its broad restriction on the use of age as a discriminating factor, prohibits substantially more state employment decisions and practices than would likely be held unconstitutional under the applicable equal protection, rational basis standard." *Id.* at 86. As a consequence, we look to such a statute for the substance of the right, just as we do with a right created entirely by statute. And as with situations in which the right is entirely created by statute, *see Rancho Palos Verdes*, 544 U.S. at 121, if Congress has also limited enforcement through the provisions in the statute, those limits indicate an intent to preclude recourse to § 1983 as a remedy.

In contrast, where a constitutional right is protected by heightened scrutiny, neither the substance nor the enforcement of the right will typically depend on any statute further defining the right. We do not assume that when a statute merely touches upon conduct that would violate the Constitution, the statute precludes the enforcement of that constitutional right unless there is a clear indication of Congressional intent that it do so. *See Fitzgerald*, 555 U.S. at 256, 259 n.2 (declining to preclude § 1983 suits alleging constitutional equal protection claims for gender discrimination in the absence of an indication that Congress affirmatively intended such preclusion).

Consistent with this, courts have allowed § 1983 constitutional claims and statutory claims to coexist when

the constitutional claim gets heightened scrutiny, but not when the constitutional claim gets rational basis review. For instance, in *Fitzgerald*, as discussed above, the Supreme Court held that Title IX does not preclude § 1983 suits alleging equal protection violations based on gender discrimination, 555 U.S. at 258, which are subject to heightened scrutiny, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994). Similarly, we have explained that Title VII of the Civil Rights Act of 1964, which prohibits employers from discriminating on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2, does not preclude suits under § 1983 alleging constitutional equal protection violations for discrimination on the basis of race or sex, both of which receive heightened scrutiny under the Equal Protection Clause. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1058 (9th Cir. 2009) (explaining that Title VII does not deprive plaintiffs of other avenues for asserting claims of race and sex discrimination) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975)); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (explaining that classifications based on race, alienage, national origin, and gender all receive heightened scrutiny).

In contrast, in *Smith*, the Supreme Court held that the EHA precluded § 1983 equal protection claims regarding disability discrimination in education. *Smith*, 468 U.S. at 1009. Disability, like age, is subject to rational basis review, not heightened scrutiny, under the Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 446.

It is well established that First Amendment claims like Stilwell's, that allege retaliation following speech on a matter of public concern, are reviewed with heightened scrutiny. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014)

(explaining that "a stronger showing [than legitimate government interests] may be necessary if the employee's speech . . . involve[s] matters of public concern" (last alteration in original) (quoting *Connick v. Myers*, 461 U.S. 138, 151–52 (1983))).  Our holding today that § 1983 suits alleging retaliation in violation of the First Amendment are not precluded by the ADEA's retaliation provision is thus consistent with the tendency of courts to conclude that there is a lack of preclusion when the right to be enforced is subject to heightened scrutiny.

F.

Contrary to Defendants' argument, a different result is not required by our prior decision in *Ahlmeyer v. Nevada System of Higher Education,* 555 F.3d 1051, 1054 (9th Cir. 2009), which held that the ADEA precludes § 1983 suits to remedy equal protection violations based on age discrimination.

In *Ahlmeyer*, we compared § 1983 equal protection claims based on age discrimination in employment to such claims under the ADEA and determined that "the ADEA provides broader protection than the Constitution," so "a plaintiff has 'nothing substantive to gain' by . . . asserting a § 1983 claim" in addition to an ADEA claim.  *Id.* at 1058 (quoting *Williams v. Wendler*, 530 F.3d 584, 586 (7th Cir. 2008)).  In light of the ADEA's greater protections, we held that its discrimination provisions are sufficiently comprehensive to preclude § 1983 equal protection claims.[12]

---

[12] There is a circuit split on this issue.  *Compare, e.g.*, *Hildebrand v. Allegheny County*, 757 F.3d 99 (3d Cir. 2014) (holding that because the ADEA provides more expansive protection against age discrimination than the Equal Protection Clause, the ADEA precludes § 1983 suits

*Ahlmeyer*'s holding was motivated at least in part by the fact that classifications based on age are subject to rational basis review. *Ahlmeyer* relied heavily on *Zombro v. Baltimore City Police Department*, 868 F.2d 1364, 1366 (4th Cir. 1989), a pre-*Fitzgerald* case holding that § 1983 suits alleging age discrimination were precluded by the ADEA in part because of this level-of-scrutiny characteristic. *See Ahlmeyer*, 555 F.3d at 1057. *Zombro* had emphasized that "the equal protection clause does not recognize a 'class defined as the aged' to be a suspect class in need of special protection in which alleged discrimination is subject to 'strict judicial scrutiny,'" 868 F.2d at 1370 (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313–14 (1976) (per curiam)), and that this differentiated age discrimination claims from "§ 1983 actions predicated on race, sex, or religious discrimination or an infringement of specific First Amendment rights." *Id.* at 1370. *Ahlmeyer* itself also noted that, unlike "claims of discrimination based on race or sex [that] are entitled to heightened scrutiny, age discrimination claims under the Constitution are subject to rational basis scrutiny." *Ahlmeyer*, 555 F.3d 1059 n.8. Thus, a plaintiff "has little to gain by circumventing the ADEA, which affords more protection in the area of age discrimination than does the federal Constitution." *Id.*

---

alleging equal protection violations based on age discrimination in employment), *cert. denied*, 135 S. Ct. 1398 (2015), *with Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012) (holding that "[a]lthough the ADEA enacts a comprehensive statutory scheme for enforcement of its own statutory rights, akin to *Sea Clammers* and *Rancho Palos Verdes*, . . . it does not preclude a § 1983 claim for constitutional rights" because of "the ADEA's lack of legislative history or statutory language precluding constitutional claims, and the divergent rights and protections afforded by the ADEA as compared to a § 1983 equal protection claim" (citing *Fitzgerald*, 555 U.S. at 252–53)).

Because the ADEA's retaliation provision is critically different from the ADEA's discrimination provision at issue in *Ahlmeyer*, that opinion is not controlling here.   As explained above, the ADEA's retaliation protections are narrower than the First Amendment's in some important respects, whereas the ADEA discrimination provision provides more protection against age discrimination than does the Equal Protection Clause.  *Cf. Kimel*, 528 U.S. at 86 ("Judged against the backdrop of our equal protection jurisprudence, it is clear that the ADEA is 'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.'" (quoting *City of Boerne v. Flores*, 521 U.S. 507, 532 (1997)).

Given the substantial difference between the level of scrutiny afforded age discrimination equal protection claims and First Amendment retaliation claims, we cannot assume that Congress intended the ADEA to affect the availability of § 1983 claims in the same manner in both subject areas.

III.

For the foregoing reasons, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.

---

FERNANDEZ, Circuit Judge, dissenting:

I respectfully dissent.

Our quest here is not to search for or to explicate constitutional principles; it is to search for congressional intent.  That is to say, Congress can set up a statutory scheme wherein it demonstrates its intent to have that scheme, not 42 U.S.C. § 1983, apply to claims for enforcement of rights

under the statute. *See, e.g., Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252–54, 129 S. Ct. 788, 793–94, 172 L. Ed. 2d 582 (2009); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 13, 20–21, 101 S. Ct. 2615, 2622–23, 2626–27, 69 L. Ed. 2d 435 (1981). Here our task is to determine whether Congress intended to make the ADEA[1] exclusive in that sense.

We have already said that Congress did just that. Specifically, we have held that "the ADEA precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1057 (9th Cir. 2009). In that case, lest there be any doubt, we went on to conclude that: "the ADEA is the exclusive remedy for claims of age discrimination in employment, even those claims with their source in the Constitution." *Id*. at 1060–61. In *Ahlmeyer*, we were dealing with the claim of an older employee that her employer had discriminated against her on account of her age. *Id*. at 1054; *see also* 29 U.S.C. § 623(a)(1). The majority says that this case differs from *Ahlmeyer* because what is involved here is a claim of retaliation.[2] *See* 29 U.S.C. § 623(d). In effect, the majority says that Congress has had two different intents regarding the ADEA.

The first of those relates to individuals whose need for protection formed the mainspring of the ADEA—employees

---

[1] Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634.

[2] *Ahlmeyer* did not draw that distinction. Of course, it is not at all unusual for those who make claims of discrimination to make claims of retaliation also. In fact, at the trial court level that happened in *Ahlmeyer* itself. *See Ahlmeyer*, 555 F.3d at 1054 n.1.

discriminated against on account of their age. *See id.* § 621; *see also id.* § 623(a)–(c). The second, somewhat more collateral, intention was designed to more fully protect the older employees for whom the ADEA was created. It relates to individuals who are retaliated against, not necessarily because of their own ages, but because they have "opposed any practice made unlawful" by the ADEA. *Id.* § 623(d).

While the majority's opinion is quite persuasively written, I am not quite persuaded because I do not believe that in creating this relatively simple piece of legislation Congress held two very different intentions regarding the ADEA. Those for whom the ADEA was primarily designed had to rely upon ADEA remedies alone, but those who were protected in order to assure that the protection of those in the first group would be more effective did not have their remedies so limited. The latter could spell out a § 1983 claim also. Nothing Congress *said* makes that so,[3] and I am unable to conclude that Congress contemporaneously held separate intentions when enacting and amending this fairly uncomplicated piece of legislation.

Again, it is congressional intent that we must seek, and even if we ignore the broad and encompassing language of *Ahlmeyer*, I cannot say that Congress held those two separate intents. In short, I believe that in deciding this case we are bound by *Ahlmeyer*.

Thus, I must respectfully dissent.

---

[3] Indeed, the majority explains that the legislative history helps not at all.