(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## FITZGERALD ET VIR *v*. BARNSTABLE SCHOOL COMMITTEE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 07–1125.   Argued December 2, 2008—Decided January 21, 2009

Petitioners filed suit against respondents, the local school district's governing board and superintendent, alleging that their response to allegations of sexual harassment of petitioners' daughter by an older student was inadequate, raising claims under, *inter alia,* Title IX of the Education Amendments of 1972, 20 U. S. C. §1681(a), and 42 U. S. C. §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment.  Among its rulings, the District Court dismissed the §1983 claim.  The First Circuit affirmed, holding that, under this Court's precedents, Title IX's implied private remedy was sufficiently comprehensive to preclude the use of §1983 to advance constitutional claims.

*Held:*

   1. Title IX does not preclude a §1983 action alleging unconstitutional gender discrimination in schools.  Pp. 4–12.

   (a) In *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U. S. 1; *Smith* v. *Robinson*, 468 U. S. 992; and *Rancho Palos Verdes* v. *Abrams*, 544 U. S. 113, this Court found that particular statutory enactments precluded §1983 claims where it was established that Congress intended the statute's remedial scheme to "be the exclusive avenue through which a plaintiff may assert [such] claims," *Smith, supra,* at 1009.  In determining whether Congress intended for a subsequent statute to preclude the enforcement of a federal right under §1983, the Court has placed primary emphasis on the nature and extent of that statute's remedial scheme.  See *Sea Clammers,* 453 U. S., at 20.  Where the §1983 claim alleges a constitutional violation, a lack of congressional intent to preclude may also be inferred from a comparison of the rights and protections of the

other statute and those existing under the Constitution.  Pp. 4–7.

(b) In the absence of a comprehensive remedial scheme compara-
ble to those at issue in *Sea Clammers*, *Smith*, and *Rancho Palos
Verdes*, and in light of the divergent coverage of Title IX and the
Equal Protection Clause, it must be concluded that Title IX was not
meant to be an exclusive mechanism for addressing gender discrimi-
nation in schools, or a substitute for §1983 suits as a means of enforc-
ing constitutional rights.  Pp. 7–12.

(i) Title IX's only express enforcement mechanism, 20 U. S. C.
§1682, is an administrative procedure resulting in the withdrawal of
federal funding from noncompliant institutions.  This Court has also
recognized an implied private right of action, *Cannon* v. *University of
Chicago*, 441 U. S. 677, 717, for which both injunctive relief and
damages are available, *Franklin* v. *Gwinnett County Public Schools*,
503 U. S. 60, 76.  These remedies stand in stark contrast to the "un-
usually elaborate," "carefully tailored," and "restrictive" enforcement
schemes of the statutes in *Sea Clammers*, *Smith*, and *Rancho Palos
Verdes*.  Unlike those statutes, Title IX has no administrative ex-
haustion requirement and no notice provisions.  Plaintiffs can file di-
rectly in court under its implied private right of action and can obtain
the full range of remedies.  Accordingly, parallel and concurrent
§1983 claims will neither circumvent required procedures nor allow
access to new remedies.  Moreover, under *Rancho Palos Verdes,* "[t]he
provision of an express, private means of redress in the statute itself"
is a key consideration in determining congressional intent, and "the
existence of a more restrictive private remedy for statutory violations
has been the dividing line between those cases in which . . . an action
would lie under §1983 and those in which we have held that it would
not."  544 U. S., at 121.  Title IX contains no express private remedy,
much less a more restrictive one.  Pp. 7–9.

(ii) Because Title IX's protections are narrower in some re-
spects and broader in others than those guaranteed under the Equal
Protection Clause, the Court cannot agree with the First Circuit that
Congress saw Title IX as the sole means of correcting unconstitu-
tional gender discrimination in schools.  Title IX reaches institutions
and programs that receive federal funds, 20 U. S. C. §1681(a), which
may include nonpublic institutions, §1681(c), but it has consistently
been interpreted as not authorizing suit against school officials,
teachers, and other individuals.  Moreover, while the constitutional
provision reaches only state actors, §1983 equal protection claims
may be brought against individuals as well as state entities.  *West* v.
*Atkins*, 487 U. S. 42, 48–51.  And Title IX exempts from its restric-
tions several activities that may be challenged on constitutional
grounds.  See, *e.g.,* §1681(a)(5).  Even where particular activities and

particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent. Compare *Gebser* v. *Lago Vista Independent School Dist.*, 524 U. S. 274, 290, with *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 694. Pp. 9–11.

     (iii) The Court's conclusion is consistent with Title IX's context and history. Because the Congress that enacted Title IX authorized the Attorney General to intervene in private suits alleging sex discrimination violative of the Equal Protection Clause, 42 U. S. C. §2000h–2, Congress must have explicitly envisioned that private plaintiffs would bring constitutional claims to challenge gender discrimination via §1983. Moreover, Title IX was modeled after Title VI of the Civil Rights Act of 1964, *Cannon, supra,* at 694–695, and, at the time of Title IX's 1972 enactment, the lower courts routinely interpreted Title VI to allow for parallel and concurrent §1983 claims. Absent contrary evidence, it follows that Congress intended Title IX to be interpreted similarly to allow for parallel and concurrent §1983 claims. Pp. 11–12.

  2. As neither of the courts below addressed the merits of petitioners' constitutional claims or even the sufficiency of their pleadings, this Court will not do so in the first instance here. Pp. 12–13.

504 F. 3d 165, reversed and remanded.

  ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–1125

LISA FITZGERALD, ET VIR, PETITIONERS *v.* BARN-
STABLE SCHOOL COMMITTEE ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[January 21, 2009]

JUSTICE ALITO delivered the opinion of the Court.

The issue in this case of peer-on-peer sexual harassment
is whether Title IX of the Education Amendments of 1972,
86 Stat. 373, 20 U. S. C. §1681(a), precludes an action
under Rev. Stat. §1979, 42 U. S. C. §1983, alleging uncon-
stitutional gender discrimination in schools.  The Court of
Appeals for the First Circuit held that it does.  504 F. 3d
165 (2007).  We reverse.

I

Because this case comes to us on a motion to dismiss
under Federal Rule of Civil Procedure 12(b)(6), we assume
the truth of the facts as alleged in petitioners' complaint.
During the 2000–2001 school year, the daughter of peti-
tioners Lisa and Robert Fitzgerald was a kindergarten
student in the Barnstable, Massachusetts, school system,
and rode the bus to school each morning.  One day she told
her parents that, whenever she wore a dress, a third-grade
boy on the school bus would bully her into lifting her skirt.
Lisa Fitzgerald immediately called the school principal,
Frederick Scully, who arranged a meeting later that day
with the Fitzgeralds, their daughter, and another school

official, Lynda Day. Scully and Day then questioned the alleged bully, who denied the allegations. Day also interviewed the bus driver and several students who rode the bus. She concluded that she could not corroborate the girl's version of the events.

The Fitzgeralds' daughter then provided new details of the alleged abuse to her parents, who relayed them to Scully. Specifically, she told her parents that in addition to bullying her into raising her skirt, the boy coerced her into pulling down her underpants and spreading her legs. Scully scheduled a second meeting with the Fitzgeralds to discuss the additional details and again questioned the boy and other students.

Meanwhile, the local police department conducted an independent investigation and concluded there was insufficient evidence to bring criminal charges against the boy. Based partly on the police investigation and partly on the school's own investigation, Scully similarly concluded there was insufficient evidence to warrant discipline. Scully did propose remedial measures to the Fitzgeralds. He suggested transferring their daughter to a different bus or leaving rows of empty seats between the kindergarteners and older students on the original bus. The Fitzgeralds felt that these proposals punished their daughter instead of the boy and countered with alternative proposals. They suggested transferring the boy to a different bus or placing a monitor on the original bus. The Barnstable school system's superintendent, Russell Dever, did not act on these proposals.

The Fitzgeralds began driving their daughter to school to avoid further bullying on the bus, but she continued to report unsettling incidents at school. The Fitzgeralds reported each incident to Scully. The Fitzgeralds' daughter had an unusual number of absences during the remainder of the school year.

In April 2002, the Fitzgeralds filed suit in District

Court, alleging that the school system's response to their allegations of sexual harassment had been inadequate, resulting in further harassment to their daughter. Their complaint included: (1) a claim for violation of Title IX against the Barnstable School Committee (the school system's governing body), (2) claims under 42 U. S. C. §1983 for violations of Title IX and the Equal Protection Clause of the Fourteenth Amendment against the school committee and Dever, and (3) Massachusetts state-law claims against the school committee and Dever. The school committee and Dever (respondents here), filed a motion to dismiss, which the District Court granted as to the §1983 claims and the state-law claims. On the Title IX claim, the school committee filed a motion for summary judgment, which the District Court also granted. *Hunter* v. *Barnstable School Committee,* 456 F. Supp. 2d 255, 266 (Mass. 2006).

The Court of Appeals for the First Circuit affirmed. 504 F. 3d 165. Turning first to the Title IX claim against the school committee, the court noted three points that were not in dispute: (1) the school committee was the recipient of federal funds and was therefore subject to Title IX, (2) the school committee had actual knowledge of the harassment the Fitzgeralds' daughter suffered, and (3) if the allegations of the complaint were true, the harassment was "severe, pervasive and objectively offensive." *Id.*, at 172. The court concluded that the Fitzgeralds' Title IX claim lacked merit, however, because the response of the school committee and Dever to the reported harassment had been objectively reasonable. *Id.*, at 175.

The Court of Appeals turned next to the Fitzgeralds' §1983 claims. Relying on this Court's precedents in *Middlesex County Sewerage Authority* v. *National Sea Clammers Assn.*, 453 U. S. 1 (1981), *Smith* v. *Robinson*, 468 U. S. 992 (1984), and *Rancho Palos Verdes* v. *Abrams*, 544 U. S. 113 (2005), the court characterized Title IX's implied

private remedy as "sufficiently comprehensive" to preclude use of §1983 to advance statutory claims based on Title IX itself.  504 F. 3d, at 179.  This reasoning, the court held, "appl[ied] with equal force" to the constitutional claims. *Ibid.*  The court concluded that "Congress saw Title IX as the sole means of vindicating the constitutional right to be free from gender discrimination perpetrated by educational institutions." *Ibid.*

The Court of Appeals' decision deepened a conflict among the Circuits regarding whether Title IX precludes use of §1983 to redress unconstitutional gender discrimination in schools.  Compare *Bruneau ex rel. Schofield* v. *South Kortright Central School Dist.*, 163 F. 3d 749, 758–759 (CA2 1998); *Waid* v. *Merrill Area Public Schools* 91 F. 3d 857, 862–863 (CA7 1996); *Pfeiffer* v. *Marion Center Area School Dist.*, 917 F. 2d 779, 789 (CA3 1990), with *Communities for Equity* v. *Michigan High School Athletic Assn.*, 459 F. 3d 676, 691 (CA6 2006); *Crawford* v. *Davis*, 109 F. 3d 1281, 1284 (CA8 1997); *Seamons* v. *Snow*, 84 F. 3d 1226, 1234 (CA10 1996).  We granted certiorari to resolve this conflict, 553 U. S. ___ (2008), and we now reverse.

## II
### A

In relevant part, 42 U. S. C. §1983, provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In three cases, this Court has found that statutory enactments precluded claims under this statute. *Sea Clammers*, *supra; Smith*, *supra; Rancho Palos Verdes*, *supra.* These cases establish that "[t]he crucial consideration is what Congress intended." *Smith,* 468 U. S., at 1012. If Congress intended a statute's remedial scheme to "be the exclusive avenue through which a plaintiff may assert [the] claim," *id.*, at 1009, the §1983 claims are precluded. See *Rancho Palos Verdes*, 544 U. S., at 120–121 ("The critical question, then, is whether Congress meant the judicial remedy authorized by [the statute] to coexist with an alternative remedy available in a §1983 action").

In those cases in which the §1983 claim is based on a statutory right, "evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under §1983." *Id.,* at 120 (internal quotation marks omitted). In cases in which the §1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace §1983 suits enforcing constitutional rights. Our conclusions regarding congressional intent can be confirmed by a statute's context. *Id.,* at 127 (BREYER, J., concurring) ("[C]ontext, not just literal text, will often lead a court to Congress' intent in respect to a particular statute").

In determining whether a subsequent statute precludes the enforcement of a federal right under §1983, we have placed primary emphasis on the nature and extent of that statute's remedial scheme. See *Sea Clammers, supra,* at 20 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to

demonstrate congressional intent to preclude the remedy of suits under §1983").

*Sea Clammers* illustrates this approach. The plaintiffs brought suit under §1983 for violations of the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972. This Court's analysis focused on these two statutes' "unusually elaborate enforcement provisions," which authorized the Environmental Protection Agency to seek civil and criminal penalties for violations, permitted "'any interested person'" to seek judicial review, and contained detailed citizen suit provisions allowing for injunctive relief. 453 U. S., at 13–14. Allowing parallel §1983 claims to proceed, we concluded, would have thwarted Congress' intent in formulating and detailing these provisions.

In *Smith*, the plaintiffs alleged deprivation of a free, appropriate public education for their handicapped child, in violation of the Education of the Handicapped Act (EHA) and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Departing from the pattern of the plaintiffs in *Sea Clammers,* the *Smith* plaintiffs relied on §1983 to assert independent constitutional rights, not to assert the statutory rights guaranteed by the EHA. As in *Sea Clammers*, however, this Court focused on the statute's detailed remedial scheme in concluding that Congress intended the statute to provide the sole avenue for relief. *Smith*, 468 U. S., at 1011 (noting "the comprehensive nature of the procedures and guarantees set out in the [the statute] and Congress' express efforts to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child").

In *Rancho Palos Verdes,* we again focused on a statute's remedial scheme in inferring congressional intent for exclusivity. After being denied a permit to build a radio tower on his property, the plaintiff brought claims for

injunctive relief under the Telecommunications Act of 1996 (TCA) and for damages and attorney's fees under §1983. Noting that the TCA provides highly detailed and restrictive administrative and judicial remedies, and explaining that "limitations upon the remedy contained in the statute are deliberate and are not to be evaded through §1983," we again concluded that Congress must have intended the statutory remedies to be exclusive. 544 U. S., at 124.

In all three cases, the statutes at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit. *Sea Clammers, supra,* at 6; *Smith, supra,* at 1011–1012; *Rancho Palos Verdes, supra,* at 122. Offering plaintiffs a direct route to court via §1983 would have circumvented these procedures and given plaintiffs access to tangible benefits—such as damages, attorney's fees, and costs—that were unavailable under the statutes.[1] "Allowing a plaintiff to circumvent" the statutes' provisions in this way would have been "inconsistent with Congress' carefully tailored scheme." *Smith, supra,* at 1012.

---

[1] The statutes at issue in *Sea Clammers* and *Smith* did not allow for damages. The statute at issue in *Rancho Palos Verdes* did not expressly allow for damages, but some lower courts interpreted it to do so. The statutes at issue in *Smith* and *Rancho Palos Verdes* did not allow for attorney's fees and costs. See *Sea Clammers*, 453 U. S., at 6–7, 13–14 (addressing the Federal Water Pollution Control Act, 86 Stat. 816, as amended, 33 U. S. C. §1251 *et seq.,* and the Marine Protection, Research, and Sanctuaries Act of 1972, 86 Stat. 1052, as amended, 33 U. S. C. §1401 *et seq.*); *Smith*, 468 U. S., at 1010–1011 (addressing the Education of the Handicapped Act, 84 Stat. 175, as amended, 20 U. S. C. §1400 *et seq.*); *Rancho Palos Verdes*, 544 U. S., at 122–123, and nn. 3, 4 (addressing the Telecommunications Act of 1996, 110 Stat. 56, 47 U. S. C. §332(c)(7)).

## B

### 1

Section 901(a) of Title IX provides:

> "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U. S. C. §1681(a).

The statute's only express enforcement mechanism, §1682, is an administrative procedure resulting in the withdrawal of federal funding from institutions that are not in compliance.  In addition, this Court has recognized an implied private right of action.  *Cannon* v. *University of Chicago*, 441 U. S. 677, 717 (1979).  In a suit brought pursuant to this private right, both injunctive relief and damages are available.  *Franklin* v. *Gwinnett County Public Schools*, 503 U. S. 60, 76 (1992).

These remedies—withdrawal of federal funds and an implied cause of action—stand in stark contrast to the "unusually elaborate," "carefully tailored," and "restrictive" enforcement schemes of the statutes at issue in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*.  Unlike those statutes, Title IX has no administrative exhaustion requirement and no notice provisions.  Under its implied private right of action, plaintiffs can file directly in court, *Cannon*, *supra,* at 717, and can obtain the full range of remedies, see *Franklin*, *supra,* at 72 (concluding that "Congress did not intend to limit the remedies available in a suit brought under Title IX").  As a result, parallel and concurrent §1983 claims will neither circumvent required procedures, nor allow access to new remedies.

Moreover, this Court explained in *Rancho Palos Verdes* that "[t]he provision of an *express*, private means of redress in the statute itself" is a key consideration in determining congressional intent, and that "the existence of a

more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under §1983 and those in which we have held that it would not." 544 U. S., at 121 (emphasis added). As noted, Title IX contains no express private remedy, much less a more restrictive one. This Court has never held that an implied right of action had the effect of precluding suit under §1983, likely because of the difficulty of discerning congressional intent in such a situation. See *Franklin, supra,* at 76 (SCALIA, J., concurring in judgment) ("Quite obviously, the search for what was Congress' *remedial* intent as to a right whose very existence Congress did not expressly acknowledge is unlikely to succeed"). Mindful that we should "not lightly conclude that Congress intended to preclude reliance on §1983 as a remedy for a substantial equal protection claim," *Smith*, 468 U. S., at 1012, we see no basis for doing so here.

2

A comparison of the substantive rights and protections guaranteed under Title IX and under the Equal Protection Clause lends further support to the conclusion that Congress did not intend Title IX to preclude §1983 constitutional suits. Title IX's protections are narrower in some respects and broader in others. Because the protections guaranteed by the two sources of law diverge in this way, we cannot agree with the Court of Appeals that "Congress saw Title IX as the sole means of vindicating the constitutional right to be free from gender discrimination perpetrated by educational institutions." 504 F. 3d, at 179.

Title IX reaches institutions and programs that receive federal funds, 20 U. S. C. §1681(a), which may include nonpublic institutions, §1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals, see, *e.g.*, *Hartley*

v. *Parnell,* 193 F. 3d 1263, 1270 (CA11 1999). The Equal Protection Clause reaches only state actors, but §1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities. *West* v. *Atkins*, 487 U. S. 42, 48–51 (1988).

Title IX exempts from its restrictions several activities that may be challenged on constitutional grounds. For example, Title IX exempts elementary and secondary schools from its prohibition against discrimination in admissions, §1681(a)(1); it exempts military service schools and traditionally single-sex public colleges from all of its provisions, §§1681(a)(4)–(5). Some exempted activities may form the basis of equal protection claims. See *United States* v. *Virginia*, 518 U. S. 515, 534 (1996) (men-only admissions policy at Virginia Military Institute violated the Equal Protection Clause); *Mississippi Univ. for Women* v. *Hogan*, 458 U. S. 718, 731 (1982) (women-only admission policy at a traditionally single-sex public college violated the Equal Protection Clause).

Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent. For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference. *Gebser* v. *Lago Vista Independent School Dist.,* 524 U. S. 274, 290 (1998). A plaintiff stating a similar claim via §1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice. *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658, 694 (1978).

In light of the divergent coverage of Title IX and the Equal Protection Clause, as well as the absence of a comprehensive remedial scheme comparable to those at issue

in *Sea Clammers*, *Smith*, and *Rancho Palos Verdes*, we conclude that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in schools, or a substitute for §1983 suits as a means of enforcing constitutional rights. Accordingly, we hold that §1983 suits based on the Equal Protection Clause remain available to plaintiffs alleging unconstitutional gender discrimination in schools.

### 3

This conclusion is consistent with Title IX's context and history. In enacting Title IX, Congress amended §902, 78 Stat. 266–267, 42 U. S. C. §2000h–2 to authorize the Attorney General to intervene in private suits alleging discrimination on the basis of sex in violation of the Equal Protection Clause. See §906, 86 Stat. 375 (adding the term "sex" to the listed grounds, which already included race, color, religion or national origin). Accordingly, it appears that the Congress that enacted Title IX explicitly envisioned that private plaintiffs would bring constitutional claims to challenge gender discrimination; it must have recognized that plaintiffs would do so via 42 U. S. C. §1983.

Moreover, Congress modeled Title IX after Title VI of the Civil Rights Act of 1964, *Cannon,* 441 U. S., at 694–695, and passed Title IX with the explicit understanding that it would be interpreted as Title VI was, *id.*, at 696. At the time of Title IX's enactment in 1972, Title VI was routinely interpreted to allow for parallel and concurrent §1983 claims, see, *e.g.*, *Alvarado* v. *El Paso Independent School Dist.*, 445 F. 2d 1011 (CA5 1971); *Nashville I–40 Steering Comm.* v. *Ellington*, 387 F. 2d 179 (CA6 1967); *Bossier Parish School Bd.* v. *Lemon*, 370 F. 2d 847 (CA5 1967), and we presume Congress was aware of this when it passed Title IX, see *Franklin*, 503 U. S., at 71 (in assessing Congress' intent, "we evaluate the state of the law

when the Legislature passed Title IX"). In the absence of any contrary evidence, it follows that Congress intended Title IX to be interpreted similarly to allow for parallel and concurrent §1983 claims. At the least, this indicates that Congress did not affirmatively intend Title IX to preclude such claims.[2]

## III

One matter remains. Respondents contend that the judgment of the Court of Appeals should be affirmed on independent grounds—namely, that the Fitzgeralds have no actionable §1983 claim on which to proceed. They contend that the Court of Appeals' holding that neither the school committee nor Dever acted with deliberate indifference is conclusive and forecloses a §1983 constitutional claim based on a similar theory of liability. They contend that all other §1983 constitutional claims on these facts are precluded by the Fitzgeralds' failure to allege such claims adequately or to preserve them on appeal.

The Fitzgeralds respond that they have no intention of relitigating the issue of deliberate indifference. They intend, they say, to advance claims of discriminatory

——————

[2] Respondents argue that constitutional protections against gender discrimination were minimal in 1972, as the only gender-based equal protection case this Court had decided employed a rational basis standard. *Reed* v. *Reed*, 404 U. S. 71, 76 (1971). But see Gunther, In Search of Evolving Doctrine on a Changing Court: A Model for Newer Equal Protection, 86 Harv. L. Rev. 1, 34 (1972) (*Reed* exemplified the application of rationality review "with bite"). They further argue that because Congress could not have viewed the Equal Protection Clause as offering a meaningful remedy for sex discrimination by schools, it could not have envisioned and intended for Title IX and §1983 constitutional claims to proceed side by side. But the relevant question is not whether Congress envisioned that the two types of claims would proceed together in addressing gender discrimination in schools; it is whether Congress affirmatively intended to preclude this result. The limited nature of constitutional protections against gender discrimination in 1972 offers no evidence that Congress did.

treatment in the investigation of student behavior and in the treatment of student complaints, which they were foreclosed from developing at the earliest stages of litigation by the dismissal of the §1983 claims.

As the Fitzgeralds note, no court has addressed the merits of their constitutional claims or even the sufficiency of their pleadings. Ordinarily, "we do not decide in the first instance issues not decided below," *National Collegiate Athletic Assn.* v. *Smith*, 525 U. S. 459, 470 (1999), and we see no reason for doing so here.

Accordingly, we reverse the Court of Appeals' judgment that the District Court's dismissal of the §1983 claims was proper and remand this case for further proceedings consistent with this opinion.

*It is so ordered.*