**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4383
_____

CHERYL WILLIAMS,

Appellant

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION;
JOSEPH RETORT; ADAM STALCZYNSKI
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:14-cv-01290)
District Judge:  Hon. Nora B. Fischer
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2017

Before:  SMITH, *Chief Judge*, NYGAARD, and FUENTES,
*Circuit Judges*

(Opinion Filed:  August 30, 2017)

Christi M. Wallace
Kraemer, Manes & Associates
600 Grant Street
U.S. Steel Tower, Suite 660
Pittsburgh, PA 15219

*Attorney for Appellant*

Josh Shapiro
John G. Knorr
Thomas L. Donahoe
Kemal A. Mericli
Office of Attorney General of Pennsylvania
564 Forbes Avenue
6th Floor, Manor Complex
Pittsburgh, PA 15219

*Attorneys for Appellees*

———————————

OPINION OF THE COURT

———————————

FUENTES, *Circuit Judge*.

Cheryl Williams, an African-American woman, claims that she was subjected to constant harassment at the Pennsylvania Human Relations Commission (the "Commission") by her supervisors, Joseph Retort and Adam Stalczynski. As a result of this treatment, she alleges she faced

a hostile work environment and was ultimately constructively discharged from her position as a Human Relations Representative. She then filed this action against the Commission under Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] seeking damages for the loss of her job and the harm sustained to her physical and emotional health. She also included claims against her former supervisors, Retort and Stalczynski, claiming that they violated her federal rights under Title VII and the Americans with Disabilities Act ("ADA")[2] and they are therefore liable for damages under 42 U.S.C. § 1983.[3] On defendants' motion, the District Court granted summary judgment in favor of all defendants.

In this case, we address for the first time whether violations of Title VII and the ADA may be brought through § 1983. In light of the comprehensive administrative scheme established by Title VII and the ADA, we conclude that these claims, standing alone, may not be asserted under § 1983. And because we also agree with the District Court that Plaintiff Cheryl Williams presents no triable issues of fact on her Title VII claims against the Commission, we will affirm.

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] 42 U.S.C. § 12112, *et seq.*

[3] As discussed more fully below, § 1983 allows plaintiffs to recover damages when their federal constitutional or statutory rights are violated by state actors.

# I.

## A.

Williams was originally employed at the Commission in the early 1990s, and she returned to the Commission in September 1999 as a Human Relations Representative in the Pittsburgh office. There, she was tasked with investigating complaints of discrimination, interviewing witnesses, negotiating settlements, conducting fact-finding conferences, and writing reports and conciliation recommendations. Williams also served as Chairperson of a union that represents Commission investigators, acting as the primary negotiator for matters related to their terms and conditions of employment.

Williams was primarily supervised by Joseph Retort, a Caucasian man, from 2010 until her resignation in January 2014. She was also indirectly supervised by the Executive Director of the Pittsburgh office, a post held by George Simmons during most of Williams's time at the Commission. Eventually, Simmons retired and, in December 2012, Adam Stalczynski assumed the role of Executive Director. He supervised Williams until her resignation.

Williams claims that, between 2009 and 2013, she suffered discrimination at the hands of various Commission personnel, primarily Joseph Retort and Adam Stalczynski. Specifically, she alleges that: (1) she was suspended without pay for five days in 2009 after she objected to the presence of Commission attorneys at fact-finding conferences, (2) the Commission refused to accommodate her workstation needs

4

when they moved offices in 2010,[4] (3) Retort improperly placed her on a performance improvement plan for a few weeks in 2010, (4) she was struck by a Commission attorney in 2011 while attempting to leave Simmons's office, (5) her co-worker overheard a Commission attorney call Williams a "bitch" in 2012,[5] and (6) she was wrongly reprimanded for insubordination in August 2013 following a confrontation with Stalczynski regarding her requests for leave. Williams contends that each of these incidents, both individually and in their totality, were not the result of common workplace strife, but were unlawful instances of discrimination based on her status as an African-American woman.

After leaving work in August 2013, Williams submitted a Family Medical Leave Act ("FMLA") request seeking leave from the Commission because she had leg pain and diffuse muscle aches from fibromyalgia. She was granted FMLA leave through February 2014, but never returned to work. She resigned from the Commission several months later.

---

[4] Williams suffers from certain physical ailments, primarily fibromyalgia and chronic musculoskeletal pain. Fibromyalgia is a chronic pain disorder that causes widespread pain and tenderness to touch. Williams had previously received various accommodations, including voice-activated computer software, a telephone headset, a raised monitor, a trackball mouse, and a footstool due to these conditions. But after the move to a new office building in 2010, the Commission did not provide Williams with her previous workstation set up.

[5] App. at 719.

B.

In November 2013, Williams lodged a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). She subsequently received a right-to-sue letter from the EEOC and filed a four-count amended complaint with the District Court. Only two counts of her complaint are relevant to this appeal:[6] (1) a claim against the Commission for discrimination, hostile work environment, and constructive discharge under Title VII; and (2) a § 1983 claim against her supervisors, Retort and Stalczynski, based on violations of Title VII and the ADA.[7]

---

[6] After a partial motion to dismiss, the District Court dismissed claims against the Commission for violations of the ADA, the Age Discrimination in Employment Act, and the Pennsylvania Human Relations Act ("PHRA"). *Williams v. Pa. Human Relations Comm'n*, No. 14-1290, 2016 WL 6834612, at *1 (E.D. Pa. Nov. 21, 2016); *Williams v. Pa. Human Relations Comm'n*, No. 14-1290, 2015 WL 222388, at *1 (W.D. Pa. Jan. 14, 2015). These claims are not before us on appeal.

[7] Williams also included § 1983 claims against Retort and Stalczynski based on PHRA violations. However, it is beyond dispute that PHRA claims are not cognizable under § 1983 because they are derived from state, rather than federal, law. *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011) ("Thus, by its terms, § 1983 provides a remedy for violations of federal, not state or local, law."). And, on appeal, Williams advances no argument that PHRA rights may be vindicated under § 1983. *See* Appellant's Br. at 7-13.

On defendants' motion for summary judgment, the District Court first entered judgment in favor of Retort and Stalczynski on Williams's § 1983 claim, concluding that Title VII and ADA claims cannot be vindicated through § 1983 because doing so would frustrate Congress's statutory scheme.[8] With respect to Williams's Title VII claim against the Commission, the District Court determined that Williams was required to file a complaint with the EEOC within 300 days of any alleged unlawful employment practice, and therefore any discrete discriminatory acts outside this period were not cognizable.[9] The Court then addressed every alleged adverse employment action and determined that, under the totality of the circumstances, these incidents were not severe or persistent enough to sustain a claim for hostile work environment or constructive discharge.[10] Thus, the District Court entered summary judgment for the Commission on Williams's Title VII claims.

---

[8] *Williams*, 2016 WL 6834612, at *11-13.

[9] *Id.* at *13-18.

[10] *Id.* at *18-25.

## II.[11]

Williams maintains that the District Court erred by (1) granting summary judgment for Retort and Stalczynski on her § 1983 claims, and (2) granting summary judgment for the Commission on her Title VII claims. Both arguments are unavailing.

### A.

Williams first contends that, contrary to the District Court's conclusion, her ADA and Title VII claims against Retort and Stalczynski are cognizable under § 1983. We, however, reject this argument and, in line with every circuit to address this issue, hold that plaintiffs may not seek damages under § 1983 for stand-alone violations of either Title VII or the ADA.

---

[11] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the district court's grant of summary judgment, applying the same standard that the court should have applied. *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010). Summary judgment should be granted if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[12]

It is well settled that § 1983 does not confer any substantive rights, but merely "provides a method for vindicating federal rights elsewhere conferred."[13] Even when an independent federal right exists, however, Congress may choose to foreclose a remedy under § 1983, either by expressly "forbidding recourse to § 1983 in the statute itself," or by "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."[14] In determining whether a § 1983 action is disallowed, "[t]he crucial consideration is what Congress intended."[15]

---

[12] 42 U.S.C. § 1983.

[13] *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014) (quoting *Albright v. Oliver,* 510 U.S. 266, 271 (1994)).

[14] *Blessing v. Freestone*, 520 U.S. 329, 341 (1997).

[15] *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 252 (2009) (quoting *Smith v. Robinson*, 468 U.S. 992, 1012

Both Title VII—which prohibits employment discrimination based on an individual's race, color, religion, sex, or national origin [16]—and the ADA—which prohibits employment discrimination based on an individual's disability [17] —utilize the same comprehensive remedial scheme.[18]  As relevant here, in states with an agency authorized to grant relief for prohibited employment discrimination, like Pennsylvania, employees must resort to that state remedy.[19] Employees must also file a "charge" with the EEOC within 300 days of the alleged unlawful employment practice, or within 30 days after receiving notice that the analogous state agency

---

(1984)); *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005) (same).

[16] 42 U.S.C. § 2000e-2(a).

[17] 42 U.S.C. § 12101(b)(1).

[18] 42 U.S.C. § 12117(a); *see Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012) ("Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit."); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[19] *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000) (citing 42 U.S.C. § 2000e-5(c)).  Indeed, "a Title VII plaintiff must wait 60 days after proceedings have commenced under state or local law to file a charge with the EEOC, unless such proceedings have earlier terminated." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 119 (2002) (citing 42 U.S.C. § 2000e-5(c)).

has terminated proceedings, whichever is earlier.[20]  The purpose of this exhaustion requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action."[21]  Indeed, if "there is reasonable cause to believe that the charge is true," the EEOC must attempt to "eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."[22]  And if that process fails, the EEOC (or the Attorney General) may either bring suit in federal court, or, alternatively, notify the employee so that he or she may institute an employment discrimination suit within 90 days.[23]

In stark contrast, § 1983 has only a one-step "remedial scheme": plaintiffs may file § 1983 suits directly in

---

[20] *See* 42 U.S.C. § 2000e-5(e)(1); *Noel v. Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010).

[21] *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir. 1998)).

[22] 42 U.S.C. § 2000e-5(b).

[23] 42 U.S.C. § 2000e-5(f)(1); *see McGovern v. City of Phila.*, 554 F.3d 114, 115 n.1 (3d Cir. 2009) ("A claimant is required to file a Title VII suit within 90 days of receiving a Right to Sue Letter.").  Where, as here, the employer is a "government, governmental agency, or political subdivision", "the [EEOC] shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court."  42 U.S.C. § 2000e-5(f)(1).

federal court.[24]  There is neither an administrative process to be exhausted[25] nor any mechanism by which discriminatory practices may be informally resolved with an administrative agency.

Given these respective statutes, Congress's intent is clear.  Allowing pure Title VII and ADA claims under § 1983 would thwart Congress's carefully crafted administrative scheme by throwing open a back door to the federal courthouse when the front door is purposefully fortified.[26]  Moreover, while Title VII and the ADA impose liability only on *employers*, permitting a plaintiff to sue under § 1983 based on

---

[24] *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 254 (2009) (noting that § 1983 provides "a direct route to court"); *Keller v. Prince George's Cty.*, 827 F.2d 952, 955 (4th Cir. 1987) ("A Title VII claimant must also exhaust her state and federal administrative remedies before being allowed to proceed to federal court; § 1983 has no similar exhaustion requirement.").

[25] Of course, some plaintiffs may have administrative exhaustion requirements independent of § 1983.  The Prison Litigation Reform Act, for example, "mandates that prisoners exhaust internal prison grievance procedures before filing suit." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) (citing 42 U.S.C. § 1997e(a)).

[26] *See Smith v. Robinson*, 468 U.S. 992, 1024 (1984) ("It would make little sense for Congress to have established such a detailed and comprehensive administrative system and yet allow individuals to bypass the system, at their option, by bringing suits directly to the courts under [ ] § 1983.").

violations of these same statutes would open *individuals*, like Retort and Stalczynski here, to employment discrimination suits.[27] As the Supreme Court has advised, our primary inquiry is whether "the statutes at issue require[] plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit."[28] Title VII and the ADA do exactly that.

This conclusion is not only supported but compelled by other cases in this area. The Supreme Court, for instance, has routinely found that analogous administrative schemes have precluded § 1983 actions seeking to remedy violations of those schemes alone. In *City of Rancho Palos Verdes, California v. Abrams*, the Court held that the "complex and novel statutory scheme" of the Telecommunications Act of

---

[27] *See Roman-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011) ("Title I of the ADA, like Title VII of the Civil Rights Act, addresses the conduct of employers only and does not impose liability on co-workers." (internal quotation marks and citation omitted)); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting that there is no individual liability under the Title I of the ADA); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc) ("Congress did not intend to hold individual employees liable under Title VII.").

[28] *Fitzgerald*, 555 U.S. at 254 (drawing this principle from prior Supreme Court cases); *see also Hildebrand*, 757 F.3d at 108 ("The Supreme Court has consistently indicated that the comprehensiveness of a statute's remedial scheme is the primary factor in determining congressional intent.").

13

1996 prohibits suits under § 1983.[29] And in the seminal case of *Middlesex County Sewerage Authority v. National Sea Clammers Association*, the Court similarly found that the "unusually elaborate enforcement provisions" of the Federal Water Pollution Control Act Amendments of 1972 and the Marine Protection, Research, and Sanctuaries Act of 1972 forbid § 1983 actions.[30] Following the Supreme Court's lead, this Court has correspondingly held that comprehensive remedial schemes akin to Title VII and the ADA forestall actions under § 1983.[31] And, indeed, every circuit to consider this exact question has held that, while a plaintiff may use § 1983 "as a vehicle for vindicating rights independently conferred by the Constitution,"[32] Title VII and ADA statutory

---

[29] 544 U.S. 113, 127 (2005)

[30] 453 U.S. 1, 13-18 (1981); *see Smith*, 468 U.S. at 1009-16 (holding that the "comprehensive scheme" of the Education of the Handicapped Act ("EHA") precludes § 1983 suits based on violations of the Due Process Clause and the Equal Protection Clause because they are nearly identical to EHA claims).

[31] *See, e.g.*, *Hildebrand*, 757 F.3d at 109 (holding that the "comprehensive remedial scheme" of the Age Discrimination in Employment Act precludes § 1983 suits); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 806 (3d Cir. 2007) (en banc) (holding that the "comprehensive remedial scheme" of the Individuals with Disabilities Education Act and the Rehabilitation Act precludes some § 1983 suits).

[32] *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012).

rights cannot be vindicated through § 1983.[33]

Accordingly, we conclude that Williams may not seek damages against Retort and Stalczynski under § 1983 for statutory violations of either Title VII or the ADA, standing alone.[34]

---

[33] Title VII: *Levin v. Madigan*, 692 F.3d 607, 620 n.4 (7th Cir. 2012); *Henley*, 686 F.3d at 642; *Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 (11th Cir. 1998); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997); *Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir. 1992); *see Stilwell v. City of Williams*, 831 F.3d 1234, 1250 (9th Cir. 2016); *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000); *Annis v. Cty. of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994); *Beardsley v. Webb*, 30 F.3d 524, 527 (4th Cir. 1994).

ADA: *Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 449 (7th Cir.), *cert. denied*, 137 S. Ct. 592 (2016); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1011 (8th Cir. 1999) (en banc); *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997).

[34] Given that Williams premised her § 1983 claims solely on violations of Title VII and the ADA, we need not address whether a plaintiff may allege independent *constitutional* violations under § 1983 based on the same underlying facts. At least in the Title VII context, however, there is a strong argument that plaintiffs may advance an employment discrimination claim under § 1983 based on an Equal Protection Clause violation, either concurrently with, or independent of, a Title VII violation. *See* cases cited, *supra,*

B.

We now turn to Williams's Title VII claims against the Commission. After a careful review of the record on appeal, the parties' arguments, and the District Court's thorough opinion, we find these claims to be without merit. Accordingly, and for substantially the same reasons expressed by the District Court, we will affirm the grant of summary judgment for the Commission on Williams's Title VII claims.

## III.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Retort and Stalczynski on Williams's § 1983 claims, and in favor of the Commission on William's Title VII claims.

---

Note 33; *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990) (explaining "that the comprehensive scheme provided in Title VII does not preempt section 1983, and that discrimination claims may be brought under either statute, or both").